**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**November 24, 2008**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

---

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

v.

RODERICK C. WRIGHT, II,

Defendant-Appellant.

No. 08-3012
(D.C. No. 2:06-CR-20108-JWL-1)
(D. Kan.)

---

**ORDER AND JUDGMENT**[*]

---

Before **HENRY**, Chief Judge, **EBEL** and **GORSUCH**, Circuit Judges.

---

Defendant, Roderick C. Wright, II, was convicted after a bench trial of impersonating an officer in the United States Army in violation of 18 U.S.C. § 912. He appeals his conviction arguing there was insufficient evidence to support the verdict. Finding no error, we affirm.

---

[*]     After examining the briefs and appellate record, this panel has determined unanimously to grant the parties' request for a decision on the briefs without oral argument. *See* Fed. R. App. P. 34(f); 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument. This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

I.

This case concerns Wright's discharge from the United States Army in February 2006 and his misguided attempt later that year to undo the discharge by taking advantage of a glitch in the Army's computer system that indicated he was still on active duty. Viewed in the light most favorable to the government, the record reveals the following facts.

In late 2005 while Wright was enrolled in Officer Candidate School ("OCS") at Ft. Benning, Georgia, his commanding officer gave him a direct order to cease all contact with a fellow classmate towards whom Wright had been making unwelcome overtures. Over the Christmas holidays, Wright disobeyed the order and as a result, he was discharged from the Army for misconduct shortly before graduation. As part of the "separation proceedings," Wright received numerous documents detailing his rights and the reason for his discharge, including a Certificate of Release or Discharge from Active Duty ("DD Form 214") dated February 10, 2006.[1] Wright refused to sign the DD Form 214, but according to Denise Parker of human resources at Ft. Benning, she informed Wright he was separated from the Army regardless of whether he signed the form.

---

[1] A DD Form 214 is used to document a soldier's changed status. For example, when an officer candidate graduates from OCS, a DD Form 214 is filled out to effectuate his discharge as an enlisted soldier the day before he accepts his commission as an officer.

Despite his discharge, Wright proceeded to Ft. Sill, Oklahoma, seeking to enroll in officer basic course, which would have been his next step had he graduated from OCS. Officers at Ft. Sill quickly discovered his discharge and called military police, who escorted Wright off post and told him in no uncertain terms he was neither an enlisted soldier nor an officer in the Army. He then sought to join the Army Reserve and National Guard. During that process, he learned the Reserve's computer database incorrectly noted that he had been discharged from the Army for being absent without leave ("AWOL"). In trying to correct this mistake, he was told to contact the nearest Army installation. Being closest to Ft. Leavenworth, Wright called its personnel division and was put in touch with Lawrence DeSouza, project manager of the Adjutant General Division.

According to DeSouza's testimony, during that first conversation, Wright identified himself as a second lieutenant who was having problems with his pay. DeSouza told Wright to come into his office, which he did on July 18, 2006. During that visit, Wright told DeSouza he had graduated from OCS and had subsequently been turned away from Ft. Sill for allegedly impersonating an officer. He displayed several documents to prove he was a second lieutenant, including a different DD Form 214, which stated Wright was separated from the Army on January 18, 2006, in order to accept an officer's commission. He also provided a Department of Army ("DA") Form 71 indicating that he had taken an officer's oath of office on January 19, 2006. Wright had apparently printed these

forms from the Army's computer database and had the DA Form 71 notarized off post. After reviewing the documents, DeSouza asked an employee to search for Wright in the Defense Eligibility Enrollment System ("DEERS"), the database most relied on by his division. DEERS incorrectly indicated Wright was a second lieutenant in the Army.[2] At no point during their visit did Wright mention his discharge for misconduct or show DeSouza the February 10, 2006, DD Form 214.

Armed with the information and documents that Wright gave him and the confirmation in DEERS, DeSouza sent Wright to obtain a military I.D. and called Human Resources Command ("HRC") in Virginia to enroll Wright in the next officer basic course. HRC told DeSouza that Wright had been discharged from the Army for misconduct. He immediately went to find Wright at the I.D. card station, only to find Wright had been issued an I.D. and was en route to the finance office. There, Wright met Nancey Parsons who testified Wright told her that DeSouza had sent him to get his pay "straightened out," explaining that he had not been paid in several months. Parsons verified in the finance database that Wright's pay had stopped in February 2006. He professed ignorance as to why this could have happened, however, and did not tell Parsons about his misconduct

---

[2] When asked at trial about the discrepancy between the February 10, 2006, DD Form 214 and the notation in DEERS, DeSouza testified that the document controls, explaining that a DD Form 214 is a "source document" that "retires . . . or transitions a person from the military." Aplt. App. at 141. He also clarified that a DD Form 214 separates a person from the Army "[r]egardless of whether the Army did all the follow-up paperwork and computer entries and so forth properly[.]" *Id.*

discharge or show her the corresponding DD Form 214.  Instead, he gave her a

stack of documents to prove he was a second lieutenant in the Army.  He also told

Parsons what had happened to him at Ft. Sill, at which point, she called in her

boss, Sharon Schroeder, the finance office director.  Upon hearing Wright's story,

Schroeder contacted Ft. Sill to verify the information Wright had given them.  In

the meantime, Parsons had Wright complete the forms necessary to restart his pay

and reimburse him for travel expenses.  Ultimately, someone from the finance

office at Ft. Sill told Schroeder that Wright had been discharged from the Army

and was potentially dangerous.  Schroeder then called the military police who

came and apprehended Wright.

## II.

Title 18 U.S.C. § 912 provides that

> [w]hoever falsely assumes or pretends to be an officer or employee
> acting under the authority of the United States or any department,
> agency or officer thereof, and acts as such, or in such pretended
> character demands or obtains any money, paper, document, or thing
> of value, shall be fined under this title or imprisoned not more than
> three years, or both.

We have held that the statute criminalizes two types of conduct:  (1) assuming

and pretending to be an officer or employee of the United States and acting as

such;[3] and (2) demanding or obtaining something of value in such pretended

---

[3]     There is no uniformly accepted definition of the phrase "acting as such,"
and courts disagree with respect to the amount of independence required to
separate an overt act from the original act of impersonation.  *Compare United*

(continued...)

manner.  *United States v. Milton*, 421 F.2d 586, 587 (10th Cir. 1970).  In this case, the district court convicted Wright of both offenses.  With respect to the first, it found Wright guilty of falsely presenting himself as a second lieutenant to DeSouza, Parsons, and Schroeder and of committing several overt acts in keeping with that pretense.  One of those acts was demanding military pay and reimbursement for travel expenses to which he was not entitled, which the court concluded was a violation of the second part of the statute.

Wright's appeal focuses solely on the sufficiency of the evidence concerning his state of mind.  He concedes awareness of the discharge on February 10, 2006, but claims he began to question its effectiveness when he found out about the AWOL notation in the Army Reserve's database.  His doubts were further fueled by the Army's failure to send him documents he had been promised relating to the incident at Ft. Sill.  In short, Wright argues that by the time he contacted DeSouza, he was genuinely confused about his status with the Army and believed his discharge may have been reversed.  He claims he went to Ft. Leavenworth solely in search of answers and did not intend to deceive anyone.

---

[3](...continued)
*States v. Rosser*, 528 F.2d 652, 657 (D.C. Cir. 1976) ("the act that completes a violation of Section 912(1) must be something more than merely an act in keeping with the falsely assumed character") *with United States v. Gayle*, 967 F.2d 483, 488 (11th Cir. 1992) (holding that "an indictment [under § 912] need not allege additional acts beyond the general act of impersonation").  This case does not require us to weigh in on that debate.  As discussed below, Wright's actions went beyond mere bravado and were sufficient to satisfy even the most rigid interpretation of the statute.

When DeSouza told him, after checking in DEERS, that he was a second lieutenant in the Army, he believed him and acted accordingly. Thus, he argues, no reasonable factfinder could have found him guilty of impersonating an officer because he genuinely believed he was one.

"We review the sufficiency of the evidence supporting a guilty verdict *de novo*. We will not disturb the verdict unless no rational trier of fact could have found the defendant guilty beyond a reasonable doubt." *United States v. Hardridge*, 379 F.3d 1188, 1196 (10th Cir. 2004) (quotation omitted). "We must view the evidence and the reasonable inferences to be drawn therefrom in the light most favorable to the government." *Id.* (quotation omitted). Viewed in that light, the evidence in this case was clearly sufficient to support the conviction. Wright's entire argument hinges on the assumption that he went to Ft. Leavenworth with no other purpose than to determine whether he had, in fact, been discharged from the Army. But the evidence does not support this theory. If that were the case, why did Wright not disclose the fact of his misconduct discharge to DeSouza or anyone else at Ft. Leavenworth? When confronted with the computer discrepancies, why did he not produce the February 10, 2006, DD Form 214 and ask for clarification? When Parsons asked why he had not been paid since February 10, why profess ignorance instead of telling her about his discharge?

The district court reasonably inferred that Wright concealed this information to protect his false title, particularly given DeSouza's testimony that Wright identified himself as a second lieutenant during their initial phone conversation, long before he learned of the discrepancy in DEERS. Moreover, Wright's explanation utterly fails to justify his possession and presentation of apparently forged documents reflecting his acceptance of an officer's commission, which never occurred. "[T]he factfinder is traditionally in the better position to evaluate conflicting evidence and determine credibility." *United States v. Mendoza-Salgado*, 964 F.2d 993, 1002 (10th Cir. 1992). Wright has given us no reason to depart from this maxim here. The district court rejected his defense after hearing at least three Ft. Leavenworth witnesses testify that Wright never disclosed to them that he had been discharged at Ft. Benning. Their testimony coupled with the documentary evidence was more than sufficient to conclude Wright was impersonating an officer on July 18, 2006, rather than making innocent inquiries.

The conviction is AFFIRMED.

Entered for the Court


David M. Ebel
Circuit Judge

-8-